JOHN C. COURTNEY, ESQ.
Nevada Bar No. 11092
CHRISTOPHER BLAKESLEY, ESQ.
Nevada Bar No. 11922
LUCHERINI BLAKESLEY COURTNEY, P.C.
3125 W. Charleston Blvd., Ste. 120
Las Vegas, Nevada 89102
Ph.: (702) 608-3030
Fax: (702) 463-4443
info@lbclawgroup.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

EMIGDIO MARTINEZ PINEDA, an individual,

Plaintiff,

v.

AMCO INSURANCE COMPANY, NATIONWIDE INSURANCE, an Ohio Corporation, qualified in Nevada, DOES I-X, and ROES XI-XX,

Defendants.

Case No.: 2:17-cv-00390-GMN-GWF

**PLAINTIFF'S OPPOSITION TO DFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(ORAL ARGUMENT REQUESTED)**

COMES NOW, Plaintiff, EMIGDIO MARTINEZ PINEDA ("Plaintiff"), by and through his counsel, LBC LAW GROUP, and hereby files his Opposition to Defendant's Motion for Summary Judgment. Plaintiff's Motion is made and based on the following Memorandum of Points and Authorities, all pleadings and papers on file herein and any oral argument that this Court may allow.

. . .

. . .

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

Briefly, the Court should grant relief to Plaintiff pursuant to F.R.C.P. 56(d) because Plaintiff should be afforded more time for discovery before summary adjudication of his claims occurs. First, the instant motion was filed during a time when Plaintiff was responding to discovery propounded upon him. Second, Plaintiff has not yet propounded his discovery requests at this time because the evidence at this juncture is so voluminous that his current counsel has not had the opportunity to review all of the evidence. Third, the parties agreed *after* the instant motion was filed that the Court should extend the time for discovery. Fourth, the request for the extension for discovery was made by Defendant, showing that even Defendant believes that more discovery in needed in this case.

### II. STATEMENT OF FACTS.

On or about March 26, 2015, Defendant's claim representative reported "that the investigation to determine what was damaged as a result of smoke was **continuing** [emphasis added]." Doc. 17, p. 8, ll. 1-3.

Defendant hired an agent "to inspect the equipment" that was claimed to be damaged. Doc. 17, p. 6, ll. 16-18. This agent did not file "her inspection and findings" until April 28, 2015. Doc. 17, p. 9, ll. 3-4.

As of May 15, 2015, the investigation by Defendant remained ongoing. Doc. 17, p. 10, ll. 4-9. As of June 2, 2015, Defendant was still working on its "evaluation," and still "owed an additional $15,379.07 in BPP coverage." Doc. 17, p. 10, ll. 14-20. "On June 26, 2015, [Defendant] issued a partial denial" to Plaintiff, stating that Defendant "had completed its investigation." Doc. 17, ll. 10-12. On July 9, 2015, Defendant determined that Plaintiff was due an additional payment in the amount of "$5,222.45." Doc. 17, ll. 3-5.

2

Approximately one month later, an attorney representing Defendant (not present counsel) sent a letter to Defendant, on or about August 11, 2015, requesting additional information that would make it possible for Plaintiff to investigate the claim and the payments made to Plaintiff by Defendant. Doc. 17, p. 12, ll. 6-9.[1] Defendant responded on or about September 10, 2015, stating that Plaintiff's former counsel "should provide any additional information supporting the claim." Doc. 17, p. 9-14.

In response to Defendant's September 10, 2015, communication, Plaintiff sent an email to Defendant on or about November 6, 2015, still attempting to negotiate with Defendant regarding the amount paid on Plaintiff's claim. Exhibit "1". It was not unusual for Defendant to respond to Plaintiff's inquiries and other communications a month later. *See* Doc. 17, p. 12, ll. 6-16. In other words, Plaintiff had a reasonable expectation that negotiations were continuing *after* November 6, 2015.

In Plaintiff's communication to Defendant on November 6, 2015, Plaintiff articulated his position that Defendant had not even paid for "10% of [Plaintiff's] loss." Exhibit "1".

## III. SUMMARY JUDGMENT STANDARD.

Simply stated, summary judgment is appropriate only when "there is no genuine issue as to any material fact." F.R.C.P. 56(c). When sufficient facts are unavailable to the non-moving party, the Court should "defer consideration of the motion or deny it" or "allow time to . . . take discovery" or "issue any other appropriate order." F.R.C.P. 56(d). In order to satisfy the requirements for temporary relief under 56(d), the non-moving party must present an affidavit or declaration supporting the need for such relief. Id. The pertinent affidavit is attached hereto as Exhibit "2".

. . .

---

[1] Present counsel was not retained until September 16, 2016.

3

IV. **LEGAL ARGUMENT.**

A. **The Court Should Grant Temporary Relief to Plaintiff Pursuant to F.R.C.P. 56(d) Regarding Plaintiff's Breach of Contract Claim So That All Evidence Regarding Tolling of the Statute of Limitations Can Be Considered.**

Defendant recognizes that "[t]he Nevada Supreme Court [has] 'construe[d] the [limitations clause to allow the period of limitations to run from the date of the casualty' but tolled the period from the time when the insured gave notice of the loss until the insurer formally denied liability." Doc. 17, p. 15, ll. 13-16. Defendant has admitted that it "advised [Plaintiff] that . . . it was willing to consider new information" related to the claim on or about September 10, 2015. What is missing at this juncture is whether Defendant considered new information after September 10, 2015, whether Defendant conducted further investigation after September 10, 2015, and whether Defendant continued to investigate the claim after September 10, 2015. Thus, at this juncture, the Court should grant relief to Plaintiff pursuant to F.R.C.P. 56(d), deferring consideration of the motion until such time as Plaintiff has had an opportunity to develop the facts regarding the actual close of the investigation into the subject claim.

Defendant has argued that it specifically informed Plaintiff of the statute of limitations pursuant to contract on or about September 10, 2017, which is not entirely true. Defendant did not inform Plaintiff of any tolling right, and incorrectly informed Plaintiff of the commencement of the statute of limitations. Defendant also transmitted the following message to Plaintiff, whom Defendant knew spoke English as a second language: our continuing to investigate your claim "should not be misconstrued as equivocation in the denial of this claim." With knowledge of Plaintiff's level of English-speaking skills, Defendant should not have used language that requires extraordinary understanding of the English language in order for Plaintiff, an immigrant, to understand its meaning. Additional discover may be needed to show the manner by which Plaintiff spoke to Defendant using terms that put Defendant on notice that Plaintiff did not have

4

extraordinary command of the English language.

Notwithstanding, Defendant has essentially asserted that it decided when the tolling of the statute of limitations would stop tolling by telling Plaintiff that further investigation "should not be misconstrued as equivocation in the denial of this claim." It is the function of the Court, however, not Defendant, to determine when the tolling of a statute of limitations has lapsed. In this case, more discovery is needed in order to determine when the investigation into the claim was actually complete, and then the Court will have the requisite information to determine the tolling period.

### B. This Case is Distinguished from *Davis v. State Farm Fire and Cas. Co.*

Defendant has cited Davis v. State Farm Fire and Cas. Co., 545 F. Supp. 370 (D. Nev. 1982). In Davis, the Plaintiff allegedly suffered a loss covered by insurance on August 10, 1975, and filed a complaint on August 11, 1981, six years later.

In Davis, the Court explained that "[a] contractual stipulation [shortening the statute of limitations on a written contract], is enforceable as long as it is reasonable." Davis, *supra*, at 371 (citing Annot., 6 A.L.R.3d 1197 (1966)). In Davis, the Court found the stipulation to be reasonable under the particular facts and circumstances presented in that case.

In Davis, the Court also found that "the bad faith tort claim is controlled by the four-year statute of limitations covering actions upon a 'liability not founded upon an instrument in writing.'" Davis, *supra*, at 372 (citations omitted). "The insurer's duty to deal in good faith is an obligation imposed by law, it does not arise from the terms of the insurance contract." Id. (citation omitted). The Court cited NRS 11.190(2)(c), which states a four-year statute of limitations with respect to "[a]n action upon a contract, obligation or liability not founded upon an instrument in writing."

. . .

5

### C. Defendant has Omitted Pertinent Aspects of the Law Regarding Tolling.

Defendants have cited Clark v. Truck Ins. Exchange, 598 P.2d 628 (Nev. 1979). In Clark, the Court considered the statute of limitations tolled while the insurer continues to "negotiate[] payment with the insured." Here, Defendant has not met its burden to show exactly when Defendant ceased to negotiate with the insured. Instead, Defendant has simply stated that it warned Plaintiff on September 10, 2015, that there was a statute of limitations stated in the contract, as if Defendant's unilateral action is somehow the controlling authority on the close of any tolling period. The law, however, states that the tolling ends when negotiations end, not when the insurer simply states that the tolling period has ended.

In this case, Defendant demonstrated, on at least one occasion, that it responded to communications as late as a month after inquiry was made by Plaintiff. Defendant continued to hold itself out as negotiating with Plaintiff as of August 10, 2015. Plaintiff responded to Defendant's August 10th communication on or about November 6, 2015. Discovery has not yet revealed whether Defendant ever responded to Plaintiff's November 6th communication, but discovery remains ongoing. The question, therefore, is whether Plaintiff and Defendant had definitively ended all negotiations by November 9, 2015. Within this question is a sub-issue regarding whether Plaintiff was reasonable in understanding that Defendant could take more than three days to respond to Plaintiff's November 6th communication. Whether Plaintiff was reasonable in believing that negotiations continued beyond November 8, 2015, is a question of fact which should be decided by a jury.[2]

### D. There Exists a Genuine Issue of Material Fact with Respect to the Date Upon Which Plaintiff was Put on Notice that Negotiations Between the Parties had Ceased.

The key fact underlying the instant motion is whether Plaintiff was put on notice that all

---

[2] Defendant demanded trial by jury on or about February 16, 2017. See Doc. 5.

6

ability to negotiate his claim had ended as of November 9, 2015. If Plaintiff was not put on notice until after November 9, 2015, that all negotiations had ceased, then Defendant's arguments regarding the statute of limitations had ended.

### E. There Exists a Genuine Issue of Material Fact with Respect to Whether Defendant Acted in Bad Faith.

In Plaintiff's communication to Defendant on November 6, 2015, Plaintiff articulated his position that Defendant had not even paid for "10% of [Plaintiff's] loss." Exhibit "1". Even if Plaintiff's allegation is slightly off due to the fact that the question calls for a legal conclusion, the disparity is astounding. Thus, the Court would have to find that even in the fact of such an astounding disparity, no reasonable juror could find that Defendant acted in bad faith when it resolved Plaintiff's claim. So, the instant motion should be denied at this juncture, at least until Plaintiff has completed his endeavors to obtain discovery.

Defendant argues that there is no grounds for relief when an insurer "genuinely disputes" the claim submitted by the insured. Doc. 17, p. 17-19. If that were the law, then the cause of action for bad faith would not exist at all because the insurer could simply aver "genuine dispute" in order to defeat the cause of action. In other words, the law as stated by Defendant would give Defendant the unilateral ability to quash causes of action by simple asserting that there was a genuine dispute.

At this juncture of the litigation, there exists voluminous evidence, and discovery is not set to be completed until January of 2018. Indeed, discovery in this case is complex enough that the parties recently stipulated to extend the time set for discovery, and the Court granted the extension on July 20, 2017. Doc. 25. Accordingly, the Court should continue the decision on this motion until such time as Plaintiff has had the opportunity to conduct additional discovery. *See* F.R.C.P. 56(d).

7

### F. Defendant has Argued that Bad Faith and the Breach of the Covenant of Good Faith are Duplicative Causes of Action.

Plaintiff acquiesces that the cause of action of bad faith and the cause of action for breach of the covenant of good faith may be construed as duplicative causes of action so long as Defendant is estopped from later arguing that the body of law with respect to one of the causes of action is not applicable to the body of law with respect to the other cause of action. If Defendant certifies the same in its Reply, then one of the causes of action may be dismissed as duplicative of the other. If Defendant cannot certify the same, then the cause of action should survive summary judgment at this juncture.

### G. The Cause of Action Regarding NRS 686A Should Not be Dismissed at this Juncture.

Defendant admits that this cause of action could be pertinent if Defendant did not: (1) adopt a reasonable standard to promptly process Plaintiff's claim; (2) deny claims timely after proof was submitted; and (3) timely deny coverage; effectuate prompt settlement of claims. Doc. 17, p. 20, ll. 18-28. Defendant also admits that Plaintiff could have a claim if Defendant forced Plaintiff to institute litigation in order receive equitable compensation for his claim. Id.

At this juncture, the evidence suggests that Defendant and Plaintiff were negotiating the claim for nearly a year. Also, it is Plaintiff's position that Defendant may have resolved the claim for as little as 10% of the actual losses. There exists a colorable claim under NRS 696A.310 when, *inter alia*, Defendant pays "substantially less than the amount ultimately recovered." The instant motion, therefore, is not ripe for adjudication at this time because there has been no determination as to "the amount ultimately recovered."

### H. Defendant's Motion Regarding Punitive Damages is Grossly Premature.

Plaintiff filed the instant motion on or about June 28, 2017. More than two weeks later, Defendant requested, and Plaintiff acquiesced, to continue discovery. Doc. 21. During the interim period, Plaintiff was responding to discovery propounded by Defendant. In other words,

8

Defendant felt the need for additional discovery *after* filing the instant motion.

Thus, the Court should continue this matter until such time as additional discovery has been completed pursuant to F.R.C.P. 56(d). Supporting the notion that this motion should be deferred to another date in the future is the notion that punitive damages must be proven under the arduous standard of clear and convincing evidence, and the parties recently stipulated that additional discovery was needed in this case. Plaintiff should not be required to produce all evidence proven by clear and convincing evidence when both parties agreed that additional discover was necessary *after* the instant motion was filed and served on Plaintiff.

## V. CONCLUSION.

The instant motion should be denied for the reasons stated herein. Alternatively, the instant motion should be continued until after such time as the parties have completed more discovery, particularly considering that the parties recently agreed to extend discovery *after* the instant motion was filed.

DATED July 21, 2017.

LUCHERINI BLAKESLEY COURTNEY, P.C.

By: _____
JOHN C. COURTNEY, ESQ.
Nevada Bar No. 11092
CHRISTOPHER L. BLAKESLEY, ESQ.
Nevada Bar No. 11922
3125 W. Charleston Blvd., Ste. 120
Las Vegas, Nevada 89102
Ph: (702) 608-3030/Fax: (702) 463-4443
Email: info@lbclawgroup.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of LUCHERINI BLAKESLEY COURTNEY, P.C., and on July 21, 2017, a true and correct copy of the foregoing PLAINTIFF'S FIRST SUPPLEMTNAL LIST OF WITNESSES AND DOCUMENTS, was served electronically via the U.S. District Court's CM/ECF system upon the following counsel of record:

Robert W. Freeman, Esq.
Priscilla L. O'Briant, Esq.
6385 South Rainbow, Ste. 600
Las Vegas, Nevada 89118
*Attorney for Defendant*

_____
An Employee of LUCHERINI BLAKESLEY COURTNEY, P.C.

# EXHIBIT "1"

# EXHIBIT "1"

Re: Martinez, Emigdio - Dba The Daily Egg claim # 72 27 ... - emigdio martinez       9/12/16, 1:05 AM

# Re: Martinez, Emigdio - Dba The Daily Egg claim # 72 27 PE 028858 1~?62014 - 2nd Request

## Emigdio

Fri 11/6/2015 10:53 AM

To sizerj1@nationwide.com <sizerj1@nationwide.com>;

sizerj1@nationwide.com <sizerj1@nationwide.com>; Benjamin J. Carman <BCarman@hdlaw.com>;

Jacob in respond to your phone call early... I would like to inform you how multiplex time I did than the offers and the settlement you created It Did not cover 10% of my loss, . I still recurring expensive thanks to you, because of your lock of help I loss my business , my health, my saving, and much more .... As you know I been contact attorney to present you with a lawsuit ....very soon you will received the demand than I will preset to the court in conjunction with my attorneys....

Sent from my iPhone

On Nov 4, 2015, at 5:34 PM, L Renee Green <LRGreen@hdlaw.com> wrote:

> Jacob,
>
> Attached is a letter regarding our representation of Mr. Martinez's claim.  If you have any additional questions, do not hesitate to contact us.
>
> Sincerely,
>
> - Renee
>
> *NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. Thank you.*
>
> **From:** Margaret Raine
> **Sent:** Wednesday, November 4, 2015 3:19 PM
> **To:** L Renee Green
> **Subject:** FW: Martinez, Emigdio - Dba The Daily Egg claim # 72 27 PE 028858 12262014 - 2nd Request

100193

Re: Martinez, Emigdio - Dba The Daily Egg claim # 72 27 ... - emigdio martinez                9/12/16, 1:05 AM

Margaret Raine



*NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. Thank you.*

**From:** SIZERJ1@nationwide.com [mailto:SIZERJ1@nationwide.com]
**Sent:** Monday, November 2, 2015 12:40 PM
**To:** Margaret Raine
**Subject:** Martinez, Emigdio - Dba The Daily Egg claim # 72 27 PE 028858 12262014 - 2nd Request

Margaret,

I wanted to reach out to your office as I'm aware Hager & Dowling are representing our insured Emigdio Martinez, and L. Renee Green requested that I direct all communication through her. I wanted to get Emigdio's intent on replacing his business personal property listed on the estimate since there is recoverable depreciation remaining. Please advise if your office is no longer representing Mr Martinez so I can call him directly.

Thanks

&lt;image002.gif&gt;
[ ] Nationwide Mutual Insurance Company
[ x ] AMCO Insurance Company
[ ] Allied Property and Casualty Insurance Company
[ ] Depositors Insurance Company
[ ] Nationwide Insurance Companies of America
[ ] Nationwide Property and Casualty Insurance Co.
[ ] Nationwide Mutual Fire Insurance Company
[ ] Nationwide Agribusiness Insurance Company

&lt;5230 - Corr to Sizer Re Claim - 110415.pdf&gt;

# EXHIBIT "2"

EXHIBIT "2"

## AFFIDAVIT OF EMIGDIO MARTINEZ-PINEDA

STATE OF NEVADA     )
                    ) SS:
COUNTY OF CLARK     )

I, EMIGDIO MARTINEZ-PINEDA, (hereinafter "Affiant"), do hereby swear under penalty of perjury that the assertions of this Affidavit are true:

1. Affiant is over the age of twenty-one and the Plaintiff in above-captioned matter and competent to testify is so called upon.

2. Affiant was the owner of The Daily Egg.

3. Affiant reasonably believed he was still negotiating with AMCO after November 9, 2015, regarding his claim.

4. AMCO regularly responded to Affiant's inquiries several weeks after my inquiries were sent or delivered to AMCO.

5. Through discovery Affiant expects to be able to prove the statements made in Paragraphs 3-4 of this Affidavit.

6. Affiant expects to propound discovery after counsel has reviewed all documents I delivered to my counsel on or about July 13, 2017.

7. Affiant intends to seek the work-file of all agents of AMCO who performed work on my claim.

8. Affiant contends that AMCO paid me only a small fraction of what AMCO should have paid me, and Affiant intends to procure such proof in discovery.

9. The amount of documents in this case are voluminous.

10. Affiant speaks English as a second language and AMCO knew this fact.

11. Affiant expects to prove through discovery that AMCO did not finish investigating my claim until after November 9, 2015.

12. AMCO has mischaracterized several facts and is simply wrong about others which Affiant intends to prove through discovery, such as:

    a. The BPP in storage does in fact have items that are stained;

    b. The items in claimed as "cleanable" are not workable;

    c. Certain items listed such as, light fixtures were not part of my claim;

    d. Items that were allegedly discarded were not discarded until it was determined they were completely destroyed;

    e. the insurance company only paid me for 120 hours of labor for cleaning and inspecting the items damaged but many more hours were expended; and

    f. The lease was not set to expire in January.

13. Affiant prays that I can have an opportunity to conduct more discovery before the Court adjudicates the instant Motion.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

DATED this 21 day of July, 2017.

_____
EMIGDIO MARTINEZ-PINEDA

SUBSCRIBED and SWORN to before me this 21st day of July, 2017.

_____
NOTARY PUBLIC

TRAVIS HESSE
Notary Public State of Nevada
No. 14-13625-1
My Appt. Exp. April 24, 2018